is number 21-2080 Aldossari v. Ripp. And it's Mr. Tolman, Mr. Shen and Ms. Lamb. Mr. Tolman, whenever you're ready. Thank you and good morning. May it please the court, James Tolman for the appellant, Nadir Turki Aldossari on behalf of Rakan Aldossari. Mr. Aldossari and his son are here in the courtroom. I would like to reserve four minutes for rebuttal. It's fine, thank you. Thank you. The district court committed reversible error by dismissing the five count complaint. We've got a lot of hills to climb here. Where do you want to start? Do you want to start with immunity or standing? Standing. Thank you. Mr. Aldossari has standing. Under Article 3, Section 2 of the Constitution, there was an injury in fact. Injury in fact is financial loss. We're alleging financial loss. You've got to help us out at the jump with how he has standing when he's neither the person who was a party to the contract, he's not a shareholder in the company that was a party to the contract, he's not the representative of the estate of his father. Get us past all those if you can. And the agency issue as well. Are you referring to the assignment to his son? I apologize, Judge. Well, both that and also signing for Transgulf. Okay. And before you get to that, can I just ask a fact question, which I forgot to ask at the outset? Has there been service on transcontinental export and Saudi Est, those three entities? No. I don't believe they exist, to be honest. I believe Saudi Est was a corporation that was created by the former Crown Prince. At the time it was not Crown Prince. So there was only service on Mr. Rip before he died? Correct. Okay. Thank you. I'm sorry. Both corporations I believe are defunct and don't exist. But there was service on Mr. Rip. So Mr. Ben Nadir, I'm referring to Turkey as Mr. Ben Nadir. So why don't you start with Judge Jordan's question. So Judge Jordan, your question was, so Mr. Ben Nadir has injury in fact, because yes, he was not a party himself. Transgulf was a party. Mr. Ben Nadir being not your client. I'm sorry. That's Turkey, Ben Fajar, Ben Nadir. Okay. I'm referring to him as Mr. Ben Nadir. Okay. So Mr. Ben Nadir had standing because he suffered a direct injury. He was serving as an agent for Ben, Mohammed Ben Nayaf, former Crown Prince, again not at the time Crown Prince. All right. He was working with Ben Nayaf and he was working with Mr. Rip and they were all working together. Working together doesn't make people agents of one another, right? No, it does not. All right. And Mr. Ben Nadir, he was the, am I correct, he was the sole shareholder of the company that was the party to the operating agreement? That is my understanding. Yes, Your Honor. Okay. But he wasn't the company. The company was the party. So I guess I should ask the question this way. Is there a real party in interest who has standing to complain about what happened to the company? Under the facts of this case, Mr. Ben Nadir was a third-party beneficiary under the contract as well as there were other agreements with Mr. Rip. There were agreements. Is Rip still in the case? He's dead. He's dead. I was unable to open up an estate. I can't force an estate to be opened up for six months. He's only been dead for a little over six months now. So an estate couldn't be opened. So yes, he's still in the case. How do you sue a dead person if there's no estate? Well, the estate can be opened. So you're confident that their estate is going to be opened and that somehow you're going to serve them and we should treat him as he's in the case. Right. So I have checked periodically. The family has not opened up an estate. I am not able to. I can't open up an estate, but only after six months. Okay. So we'll, for purposes of our argument, we'll assume that Mr. Rip's estate is somehow going to be added in here and claims against him are still alive, so to speak. But you said third-party beneficiary as to Mr. Ben-Nadir. What's your reasoning for how he, as an individual, is a third-party beneficiary of this operating agreement? He's mentioned in the memorandum of understanding is incorporated into the ownership agreement. That was an agreement in which his name specifically mentioned. And other facts and circumstances show that he had a specific personal relationship with Mr. Ben-Nadir, former Crown Prince. What are the, what's the legal principle on which, what are the legal things you have to show to prove somebody's a third-party beneficiary, Mr. Tallman? You have to show that there was a, if not an express intention, at least the facts would indicate that there was, that there was an understanding among the parties that that person would be a beneficiary. So in the Scarpetti case, you know, you don't have, you have the homeowners who are able to be third-party beneficiaries even though they're not mentioned at all in the contract between an architect and a developer. And that's because the circumstances, the factual circumstances showed that that person was to be, those homeowners were to be the beneficiary. Here, the factual circumstances show that Mr. Ben-Nadir was to be the beneficiary of this agreement. There are specific statements and documents with the former Crown Prince where he says subsequent agreements or different agreements, you know, there's 24 percent for you. There's a memorandum, I'm sorry, not memorandum of understanding. There's a letter with Mr. Ripp where it says that he would be given 10 percent. So you're asking us to look at parole evidence to decide that he's a third-party beneficiary? I believe that would be appropriate for a third-party beneficiary, and I think that's one of the reasons why the court was too quick to dismiss the case. There wasn't any discovery on not only third-party beneficiary, choice of law, standing. Is that the first time you're making this argument that he's a third-party beneficiary? I believe it was mentioned in the, my appellate, my appellate's brief. You might want to, when you come back on rebuttal, remind us. By the way, how much time did you reserve for rebuttal? Four minutes. Four minutes. So that gets you past, if we accepted that, the fact that he's named in the memorandum of understanding and that we wanted to look at parole evidence. If we thought, okay, that's enough, that's plausible enough to get you past the motion to dismiss on third-party beneficiary, then you still have an additional step, which is how does your client succeed, how does your client become the beneficiary of the beneficiary? What's the basis on which that happens? If I may, I will address that question. I just want to make a point that there are four other claims that aren't based upon the ownership agreement as a document. So count one is breach of contract, ownership agreement. If you decide that Mr. Ben-Nadir was not a part of that contract, Terence Goff was, then fine. Maybe he's not a third-party beneficiary of that. I think there's a fact issue there. But there are still quantum area claims, intentional interference with contractual relations claims. Those are personal claims of Mr. Ben-Nadir, which go to the issue that you just asked about, Your Honor, and that was whether my client has standing. And under Saudi Arabia law, he is an heir. And based upon the documents that we've submitted from Mr. El Berwashed, and I know there's competing documents. That's, again, one issue where I think the district court erred in that there should have been maybe some discovery or some decision as to those issues as to whether or not an heir has to be an executor. Our position is that you don't have to. There is no executor under Saudi Arabia law. If you have ten kids, ten sons, each of those sons can go into court and sue individually for his share. Without telling the others? Without telling the others? He's only suing for his own share. He's not suing for these. It's different than you're not a representative capacity. So our position is, according to Mr. El Berwashed, under Saudi Arabia law, there is no executor. There is no guardian. Every heir has the right to pursue their individual share. Before we get to questions I have on immunity, why don't we go to Judge Sirica's question. Well, you mentioned the 24 percent in profits, and you repeatedly claim that the agreement lists Turkey next to Transgulf as entitled to those profits. I looked for that, and I couldn't find it. I apologize, that was a mistake. That was a mistake. That's not accurate. He is not listed in the actual agreement itself. He is not listed next to the percentages. There was other documents. There was a subsequent document in April of 1995 where the former Crown Prince wrote to Mr. Ben-Nadir and specifically referenced the 24 percent and says you'll get that money. He doesn't reference Transgulf at all in that document. Can you turn to the immunity issue for the Saudi defendants? For the? Saudi Arabia, Aramco. So, yes, you're on. MBS and MBN. Under the, I'm out of time. You're on our time. Okay, thank you. Under the FSIA, there are two reasons why there's no immunity for Saudi Arabia or Aramco. First, King Selman waived immunity. You really want us to say that a speech that King gave in a public forum in 2015 in which he said you're free to sue us in Saudi courts constitutes a general waiver of immunity with respect to suit in a Pennsylvania court. That's the legal position you're asserting. That is not necessarily the strongest position. I believe it is, there is. Why don't you go with your strongest position? Thank you. Under the FSIA, under 1605A2, commercial activity, the third prong of A2 talks about direct effect. And I believe that in this case, we believe that in this case, there has been direct effect because Mr. Ripp was a Pennsylvania resident. He had companies that were based in Delaware. And the... How does... Yeah, this is significant. How does the existence of one of the parties in the United States create a direct effect from a contract for Saudi Arabian oil to be refined in a Caribbean refinery? How does the existence of one of the parties in the U.S. create a direct effect in the United States based on that legal arrangement, the substance of that contract? Especially when the Supreme Court tells us that the place of performance is the key inquiry. Yes. So the commercial activity is clear here. There's no question I think there's commercial activity by Saudi Arabian Aramco. Except that this is a business deal. Right. But it's a business deal about Saudi Arabian oil going to St. Lucia for refining, right? Isn't that what it's about? It is. Okay. How does that have a direct and substantial effect in Pennsylvania? Unless you're going to say it's a worldwide oil market and the butterfly's wings, you know, in St. Lucia will affect the price. That is not our position. Okay. That is not my position. Then what's the direct effect? The direct effect is that there was financial loss suffered by one of the companies, one of the parties, or not financial loss, I'm sorry, direct effect. There was ill-gotten gain by Mr. Ripp and his companies that resulted in financial loss to my client. The statute does not require loss, financial loss. The statute requires direct effect. And the major court case at the Lee's site stands for the proposition of, it talks about injury. Injury is not in the statute. Direct effect is in the statute. So that case talks about there being a defendant that is a party, is a U.S. company. And that that's not enough for direct effect at that company. That that defendant was somehow affected by the commercial activity. That court talks about injury. Direct effect is not the same as injury. And the injury took place not where the contract was supposed to be performed and not where your client is, but the injury took place where this alleged injurer is? Well, the injury would have occurred where Mr. Ben-Nadir would have been. But the direct, Saudi Arabia. The direct effect, though, was felt by Mr. Ripp and Western Financial Export, Western. It's not really where the harm is. Correct. It's where somebody benefited. Do you have any legal authority for that position? Only the statutory language of 1605A2, which talks about based upon commercial activity, based upon commercial activity that has a direct effect. It doesn't say injury. It doesn't say harm. It just says direct effect. You have a defendant that was a party. If Mr. Ripp, Export, or Transcontinental had sued, they would have direct effect in Pennsylvania, in Delaware. Let's shift gears for just a second, if my colleagues will allow me. Am I right that under the way we've interpreted this statute, there has to have been engagement in routine, regular, and substantial commercial activities in the United States, or is that true? That would be for the first part of 1608A2, and we're not alleging that. You're not alleging that. Or that there are these entities. Actually, I was confused. I thought one of the things you were alleging was that Saudi Arabia and Saudi Aramco had engaged in routine, regular, and substantial commercial activities in the United States. You were using that as a hook. Am I wrong about that? It is in our brief, and it is an argument that was to establish commercial activity. To the extent that that suggests that we were under the first part of 1605A2, we're not. I don't know why you cited Saudi Arabia versus Nelson and the federal insurance company in our circuit favorably. It seems to me they cut the other way. Those cases are very factually different. The Nelson case dealt with, the Supreme Court case dealt with really what is commercial activity in a broad sense, and it said there was commercial activity, and then it sent it back down to the district court, or remanded, or reversed. So that case really focused on commercial activity. It does discuss about based upon, but it really focuses on what commercial activity is. In federal insurance, that case did deal with both A1 and A, I'm sorry, with A2 parts 1 and 3. But that case is about a fire in a large commercial building, and the commercial activity was a Dutch company creating a holding company, basically just owning real estate. And the court said, well, that's not. How does that change the statement of law that we made in that case? In federal insurance, we say that there has to be a substantive connection or nexus between the commercial activity and the subject matter of the cause of action. Correct. Okay. What is the substantive connection or nexus between the commercial activity and the subject matter of this course of action? There's an oil deal. So there's commercial activity by Saudi Arabia and Aramco. It had to do with oil refineries. It had to do with getting oil, crude oil, shipping of oil, all the work that Mr. Ben-Nadir had to do with the oil industry. That's what Saudi Aramco does. Maybe I misunderstood federal insurance, but I thought in saying there has to be a nexus, it was saying you've got to tie that commercial activity that you're alleging exists to the specific cause of action. And that cause of action has to be connected to the jurisdiction. No? That's not the way I understood federal insurance. I understood federal insurance to say that the commercial activity, if, so in that case there's the Dutch company that creates holding companies that own a building. Then there's a fire. And the allegations are the building somehow is designed improperly. And the court said, well, creating a holding company, the Dutch company creating a holding company in the U.S. has nothing to do with whether or not a building was designed properly, built properly, had proper fire code, fire safety. That's the disconnect there. The court does not stand. The gravamen of your complaint, let me just put it this way. The gravamen of your complaint has nothing to do with Saudi Arabia's worldwide global oil operations, does it? It has to do with a specific suit about a failure to include somebody in a refining deal in St. Lucia. No? It does. And that's why there's commercial activity that, so there's commercial activity. The way I understood federal insurance is, is if you engage in commercial activity insurance, you sell insurance, then you sell insurance and that's, then the insurance transaction might be somewhere completely separate. But, you know, the fact you sell insurance is the commercial activity for the jurisdictional purposes. So here you have the commercial activity is the oil industry or refinery. So under your theory, if a global insurance company sells insurance all over the world and there's a suit over an insurance policy that was written in Europe, over a lawsuit that was in Europe, and the injured party was in Europe, the fact that the company writes insurance all over the world means there's commercial activity affecting the United States and therefore you could say no? No. It sounds like you're doing that exact thing, only you're just substituting the word oil markets. There's oil markets all over the world. Saudi Aramco operates all over the world. There's a suit over something that has nothing to do with the United States, at least not on its face. But because they're operating all over the world, that's a subset of connection. Have I misunderstood your logic? That is not the way and maybe I'm not articulating it properly. That would be, again, I think that goes back to the first part of A2. We're in the third part. The third part is commercial activity having a direct effect. So the commercial activity is the oil industry. This contract, this issue, all these claims relate to that. So the commercial activity part is met. Now the direct effect part is the part that you have to decide whether that's been satisfied. So that's the way I understood federal insurance. The commercial activity is you're in the industry. You're just in the industry generally. Here's what I'm struggling with. I'm probably trying to patience my colleagues here. I'm struggling to understand how the assertion in federal insurance that you have to have a connection between, like a real, true, substantive connection between the commercial activity that you're pointing to and the gravamen of your complaint. The gravamen of your complaint is not there's a worldwide oil market. It's you messed over Mr. Ben Nadir. You did him dirty with respect to a very specific deal, oil going from Saudi Arabia to San Lucia. That's the gravamen of your complaint. I'm not understanding how there's a substantive connection then between that and the inarguable proposition that there's a worldwide commodity market for oil in which Saudi Aramco participates. So again, the first part of A to says commercial activity, period. We're not alleging that. I'm not maintaining that argument. I'm asking you. So it's the commercial activity and the direct effect. I don't believe that federal insurance stands for the proposition that I respectfully disagree with your analysis of, with your reading of federal insurance. I believe that federal insurance says they looked at that company and said you're a holding company in the Netherlands. And you're, that's not what, you don't, you know, that's all you did was create a company in the United States. That's all you did. That's not building a building. That's not designing a building. So there's that disconnect. That's the way I understood federal insurance is that there's a disconnect there. That's why I believe it supports our position or at least is distinguishable in that the court is saying if they built buildings all throughout the world, then they would be in the industry. Then you say, okay, was there, did they have a direct effect? And then you would say, well, maybe they didn't build this building. Maybe they, their subsidiaries built it. So maybe there's not a direct effect for that company. That would be the distinction there. That's the way I understand federal insurance. That's the way I read it. One final question on an area we haven't touched on, form nonconvenience. In your March 29 response to us, I think on page four, you concede that Switzerland is an adequate alternative form. Why are we not, why are you not there as opposed to trying to wrangle something in Pennsylvania? Because the parties, the signatories of the agreement aren't the, you know, Saudi Aramco and Saudi Arabia are not signatories to that agreement, so therefore I don't believe that arbitration provision would hold to them. As to Mr. Ripp, he asserts that, you know, that's the basis for his motion to dismiss. The court doesn't, you know, didn't address that issue. It's never been really argued as to whether or not there were exceptions to it. I mean, there's quantumary claims. There's intentional interference with contractual relations. Whether those claims fall within the arbitration clause or not has never been fully addressed because the court did not issue a ruling on that. He briefed, you know, Mr. Ripp, again, moves on that issue. If the court found that, if anybody is subject to the arbitration agreement at this point, it would be Mr. Ripp and his estate. Your brief cites in many instances all the ties that Saudi Arabia has with this matter, and you ask us to follow Saudi Arabian law, not Pennsylvania law, for example, and choice of law issues. Why don't you litigate there? I'm sorry? Why can't you litigate in Saudi Arabia? My client does not feel safe in Saudi Arabia, doesn't feel that he would get a fair trial in Saudi Arabia, and that's partly based upon there are at least a couple decisions dealing with that issue. The Peterson case specifically that I cite in the letter brief to the court found that Saudi Arabia was an inadequate forum, and then the other case, I'm sorry, the name escapes me, it's out of Texas, where they found that it was an adequate forum, but they went on to say Texas was still better. So I think they kind of fudged them maybe a little bit on the first and then just found other reasons without saying Saudi Arabia was inadequate, but ultimately came to the same decision that it should stay in Texas, regardless of the witnesses, documents. In this kind of a case, you have companies in various places throughout the world. Discovery would be difficult whether it was Saudi Arabia or Pennsylvania or anywhere. All the evidence is in Saudi Arabia, so why isn't it? No, I don't believe all the evidence is. I have contacts with people here that were associates with Mr. Ripp that have access to documents of his that go back to this deal. So no, I don't, and there were people that were involved at the time, they were associates with Mr. Ripp during the time period relevant here. So I believe there are documents here in Pennsylvania, if not the United States. Judge Jordan has a final question. The jamboree began by saying you have several hills to climb, and one hill is just the timeliness of this suit. So as a choice of law, everybody seems to agree, Pennsylvania choice of law principles apply here, right? Correct. Pennsylvania has a borrowing statute. It says that the statute of limitations, which would expire soonest, is the one that applies. Why doesn't that mean game up on this claim which arose, you know, decades ago? So there's two reasons. First is Gwaltney v. Stone, Supreme Court decision of Pennsylvania, held that the rationale, the purpose of the borrowing statute is to prevent forum shopping. That may be its purpose, but its text is perfectly clear. There's nothing ambiguous about the text, is there? It says whichever one expires soonest, that's the one you apply, right? That is what the text says. Okay. Well, why aren't we bound by the plain text of the statute? Well, I would ask the court to look to the Saudi basic industries group versus Mobile Yambu petrochemical case out of Delaware. Right. It's a Delaware case to apply a Delaware statute. Why would we not just say this is Pennsylvania law? Everybody agrees it's Pennsylvania law. Pennsylvania's got a borrowing statute. It says apply the earlier of the two. The earlier of the two is the Pennsylvania statute. We're done. Why isn't that line of reasoning dispositive of the whole case? Because I believe that the rationale, if you look at Gwaltney and borrow from the rationale of Saudi basic, that you can come to the conclusion that that's not the purpose of the statute. It would be a frustration of the purpose of the borrowing statute. To apply a statute of limitations to, you know, a plaintiff picks the form for various reasons that has a shorter statute, knowing that all the activity, all the contacts, or at least substantial portions of the contacts happened in a jurisdiction that had a longer statute of limitations, that that would be an appropriate way to interpret the borrowing statute. That's not the purpose of it. Therefore, you do not have to follow it. And I believe Gwaltney would give you that ability, along with the rationale from Saudi basic. All right. Thank you. We'll get you back in rebuttal. Thank you. Mr. Shedd. May it please the Court, Andy Shen from Kellogg Hanson, Todd Feigl and Frederick for Apalese, the Kingdom of Saudi Arabia, and the Crown Prince of Saudi Arabia. Counsel for Saudi Aramco is going to be addressing the FSIA issues as they pertain specifically to Saudi Aramco, and I'll be addressing the remaining issues. The defects in the amended complaint are numerous, and they are dispositive. The district court correctly dismissed the amended complaint, holding that Saudi Arabia and the Crown Prince were entitled to immunity, and it correctly held that appellant lacked Article III standing to assert any of Was the district court right in the standing issue as an Article III matter, when part of it is addressed to a contraction like who's party and who's not a party, et cetera? Yes, Your Honor. Is that a merits issue? We believe the district court was correct. The 8th Circuit and the 11th Circuit have treated this as an Article III issue. The 3rd Circuit, in a not-presidential opinion, the nationwide insurance versus nationwide mutual case, has also treated it as an Article III issue, and we believe it is an Article III issue. The standing requires a concrete and particularized injury in fact to a legally protected interest. Why isn't – yeah, we know what the standing rule is under Lujan. The question that I'm putting to you is why aren't cases like heart drug and others that talk about the scope of a contract being a merits issue? Why aren't they controlling here? The question is whether this person actually has a plausible right under the contract. That sounds – does it not in the merits and not in the power of the court to decide the merits? Well, Your Honor, standing requires not just injury in fact, but injury in fact to a legally protected interest. That's the Lujan case. That's the Spokio case. The legally protected interest can be created by the Constitution. It can be created by statute. And it can be created by common law. It can be created by contract, right? It can be created by contract. Well, contract comes from common law. And your fight is about the contract, isn't it? Well, that's right. But it's well established. It's black letter law in every jurisdiction that only parties to a contract have standing to assert those claims. And who's the party to a contract is a merits question, isn't it? Well, Your Honor, we would submit that it's not a merits question. There are several circuit courts that have held that the Article III standing issue asks in the first instance whether there is a colorable or arguable legally protected interest. And we can cite the Sixth Circuit case, CHKRS versus City of Dublin. And so that's a threshold issue on standing, whether you have it. Let's assume for the sake of discussion that we thought that this piece of it was a merits issue. Does that mean you lose? Do they have prudential standing? Wouldn't you argue there under the Second Circuit, like SM Kids, that it's really a threshold standing? They don't win there either. Even if it is a merits issue. They don't win. You do. Yes, Your Honor, even if it is a merits issue, the resolution of this case is the same. It's really immaterial from the perspective of our clients. The district court's opinion should be affirmed, either on standing or on the merits. But we submit that this is appropriately an Article III issue. As I said, the threshold question for Article III is whether there is a colorable or arguable legally protected right. But if you're not a party, you have to be happy. You're going to be happy either way, right, Mr. Shen, if you win? That's the point. Yes, Your Honor. Okay. So why don't you speak directly to the standing argument that Mr. Tallman has made to us here, and that he made in his briefs, specifically that there's a third-party beneficiary standing point, that Mr. Bin-Nadir was named in the Memorandum of Understanding, Memo of Understanding, and Mr. Bin-Nadir were specifically named in the contract. That evidence is an intent that he be a third-party beneficiary, and that's enough to get him passed the motion to dismiss. Well, yes, Your Honor. There's no allegation in the complaint that Appellant's father was a third-party beneficiary under the contract. There's no clear intention set forth in the contract either. Well, that's what I'm trying to get you to speak to. He says there is a clear intention. What do we make of the fact that he's named in the contract? Being named in a contract is not the same thing as being named an intended beneficiary of the contract. I'd point the Court to this Garpetti case from Pennsylvania. The Court there said that there's two ways to make someone an intended beneficiary. One is to expressly state that they're an intended beneficiary. The contract doesn't state that, so we're out of that realm. The second way is the Court adopted the restatement in Section 302, and the Court said that where there's no express statement in the contract, there must be a, quote, compelling showing that he's an intended beneficiary, and two other conditions must be satisfied. Performance must satisfy an obligation of the promisee to pay money to the beneficiary. There's no allegation of that whatsoever in the contract. And, number two, circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. When you look at the language of the operating agreement and it says that we're incorporating the memorandum of understanding here, we're going to adopt it wholesale into this contract, and he's a party to that contract. Does that not, by its language, make him an intended beneficiary, that the parties to the operating agreement said, we're pulling the whole thing in, and he's a party to that? Well, as an initial matter, it's not clear at all that he's a party to the memorandum of understanding. No, it says it in the operating agreement, doesn't it? The ownership agreement says that it's incorporating the memorandum of understanding, which says that Appellant's father will be the representative of two of the companies. But it doesn't say that he's a party to the memorandum of understanding. It doesn't say that he's an intended beneficiary of the memorandum of understanding. I mean, there's a separate grounds, as the court has noted, that Appellant lacks standing. He is seeking to bring claims on behalf of his deceased father's estate. Under Pennsylvania and under Saudi law, a single heir simply does not have the right to do that. And the court can credit the affidavits that were submitted by Saudi Arabia's legal expert. As the Supreme Court says in the animal science case, the opinions of foreign law submitted by a sovereign are entitled to respectful consideration. Appellant bears the burden on proving that Saudi law is different. That's the Belray decision of the Third Circuit. They showed up with a little bit of expert testimony of their own, right? He showed up with an expert affidavit. It doesn't cite any relevant authority whatsoever. He bears the burden of showing that the law is different under Saudi Arabia than Pennsylvania. And he clearly hasn't shown that conclusively. And so under the Belray decision, the court can fill in the gaps with Pennsylvania law. What about sovereign immunity and the federal insurance case? I had a long exchange with Mr. Tallman about whether there has to be a connection between the grabment and complaint and the commercial activity alleged. Yes, Your Honor. Can you shed any light on that? I don't think this issue is complicated or controversial at all. We'd point the court to the federal insurance case, as well as the OBB versus Sachs case. The Supreme Court has made very clear that there must be commercial activity by the sovereign with a connection to the United States, and that the claims must be based on that activity that has a connection to the United States. Here, there's no allegation, even, that Saudi Arabia engaged in commercial activity. The only allegation as to commercial activity pertains to Saudi Aramco. So he doesn't meet even the initial threshold for getting into the commercial activity exception. But certainly there's no commercial activity that relates to the United States, and there's certainly no claims that are based upon commercial activity connected to the United States. And as Your Honor noted, there's no direct effect in the United States either. The Weltover decision by the Supreme Court there governs that holds that there's a direct effect when the performance is supposed to occur in the United States, which certainly is not the case here. Does the Director have any questions? Any further questions? I do have another question. Sure. Meaning no disrespect at all to the Crown Prince, I will use the initials MBS. It's easier to communicate that way if that's all right. Does it matter to the outcome of a sovereign immunity question with respect to MBS whether we apply the State Department rule or the restatement rule for determining whether he's got immunity?  Your Honor, the District Court applied both rules and correctly held that the Crown Prince is entitled to foreign official conduct-based immunity. Would you agree that the restatement rule narrows the State Department rule by adding a third piece to it? There is certainly a third prong to the restatement rule. We would submit that the State Department rule is the appropriate rule to apply. Why? For several reasons. First, the State Department rule, that is the rule applied by the Executive Branch, which is in charge of foreign relations. And the views of the Executive Branch in that realm are entitled to deference. Second, the State Department rule was the approach at common law prior to the passage of the FSIA. After Youssef versus Samantar, we now know that foreign official immunity is a common law issue, and so the common law rule applied under the State Department rule should apply. The Executive Branch has also submitted an amicus brief in the Lewis versus Matan case, taking the position expressly that the State Department rule should apply. It explained that the second restatement was published in 1965. At the time, there was a paucity of relevant authority. The restatement was then republished two more times. So the third restatement and the fourth restatement, neither of those revisions contain Section 66F. And then finally, Section 66F, on its face, does not govern applicability of immunity of a foreign state. I'm sorry, it's titled Applicability of Immunity of a Foreign State. It doesn't govern foreign official immunity. It governs the immunity of the state as a result of actions of a foreign official. Okay, thank you. Thank you. Thank you. Go ahead. May it please the Court. Carolyn Lamb with White and Case for Saudi Aramco. Saudi Aramco is clearly a direct majority-owned. There's no dispute in instrumentality. under the Foreign Sovereign Immunities Act of the foreign state. The exclusive basis for jurisdiction of the court here is, as the district court correctly decided, under the FSIA, and there is not any. Subject matter jurisdiction is not met under either of the two exceptions that the district court analyzed or any others. Looking at the first, 1605A, it would either be, as discussed this morning, under Clause 1 of A2, or under Clause 3 of A2. And I think it's clear what the gravamon is of the complaint. It relates to the ownership agreement. Saudi Aramco has nothing to do with the ownership agreement. It is not a party to the ownership agreement, and neither was the claimant. So is Saudi Aramco subject to general jurisdiction? I'm talking about personal jurisdiction now. Looking at personal jurisdiction, Your Honor, I don't think there is any basis for personal jurisdiction over Saudi Aramco. It's not at home in the United States. They do not plead that under any of the authorities, Saudi Aramco is here in the United States. Well, they talk about the general, the very large footprint that Saudi Aramco has. The oil market in general, globally, that's not even entitled to a presumption of truthfulness under a Twombly-Iqbal standard, a general oil market. You need, and I think quite right, under federal insurance, you must find some connection between the alleged commercial activity and the action here and the United States. If you're analyzing even general jurisdiction, the fact that they are operating globally doesn't mean that there is a sufficient operation in the United States to conclude that there is general jurisdiction at all over Saudi Aramco. And so I assume that's why, in a nutshell, you believe that the commercial activity exception doesn't apply. Yes. The commercial activity exception does not apply in this case. The district judge was right. There is no alleged commercial activity in the United States that this claim is based on, and nor is there a direct effect. If you look at the Supreme Court cases analyzing direct effect, you start with Weltover, of course, and in that case the Supreme Court required that the bonds, or found that the bonds, in fact, required payment in the United States. So when Argentina took an action that implicated those bonds, there was a sufficient predicate in the United States for the court in the United States to find an exception. Not so here. The only thing that we've heard about are that two of the alleged signatories of the ownership agreement who reside in the United States, that is not enough, and I would refer you to... Why isn't enough? Speak directly to Mr. Tallman's assertion that there is an effect in the United States, because Mr. Ripp was here in Pennsylvania reaping the benefits of ill-gotten gain from Mr. Ben-Nadir's share of the profits. The cases on it, and while there is not one in the Third Circuit, there is a very good one that I would hope you find persuasive in the D.C. Circuit, Valampilla v. Tanzania. And in that case, they analyzed the direct effect of a similar consequence and said, no, you need an immediate consequence of this alleged sovereign conduct that is causally connected to the claim. So you need a number of links in order to conclude... Am I hearing you right that you're saying even if Mr. Ripp got something out of this, that's not flowing from anything that a sovereign did? Nothing that Saudi Aramco did. He hasn't even alleged, with any specificity entitled to Twombly presumption of truth, any contract from Saudi Aramco, nor can he. All he's alleged, he has a very general allegation in the contract or in the complaint, but it doesn't include who the parties were, whether it was breached, if there was anything at all to be performed in the United States. There wasn't. On a supply contract for Saudi Light Crude, it's from Saudi Arabia here to St. Lucia. Should he be allowed to replead? To replead? Amend his complaint. He's already amended it once, and what he included, even in his opposition to his motion to dismiss, in fact, are some double hearsay letters that give him nothing more. There is no way he can plead in a way to make Saudi Aramco be a party. It's not a party to the operating agreement, nor is he a party to, and he doesn't allege that he's a party, to any supply contract. There's no there there. Okay. Gotcha. And nothing that he could plead would be in the United States. That is an insurpassable barrier. Is there anything else you wish to add? Well, Your Honor, the district court was correct. Thank you. Thank you. Mr. Tolman. Mr. Tolman. Thank you. Just briefly, I would like to point out that in the ownership agreement, there is no merger clause. So to the extent that there is a third-party beneficiary claim and to the extent that there is reference to Mr. Ben-Adir in that agreement specifically, I believe that there could be circumstantial evidence taken into consideration outside of that that should cause the complaint not to be dismissed on that basis. As far as the commercial activity, just again, I believe that there was direct effect through Mr. Ripp. I don't believe that the case law controls. There are cases that discuss a defendant in that major case. Again, it talks about harm, which is not the same as direct effect. So I believe that case can be distinguished. Can I ask you, and I had been calling it the operations agreement. I apologize. It was called the ownership agreement in the district court's opinion in the briefing. But I think we all know what I was talking about. In this ownership agreement and in your complaint, actually in your opening brief, you seem to say that Saudi Arabia has a much greater governmental interest in this and having its laws applied than Pennsylvania's laws applied. Did I read you right on that? Yes. Okay. So even if there are some documents in the United States, this is going back to form nonconvenience. If you yourself say, look, Saudi Arabian law should apply, and you yourself acknowledge that the contract was formed in Saudi Arabia, and you would have to acknowledge that even if not all the evidence is in Saudi Arabia, certainly some substantial portion of the evidence is in Saudi Arabia, with all that in place, is the single thing that prevents you from acknowledging that the correct form is Saudi Arabia is your client's statement that he feels unsafe? Or is there some other thing that you point to that would stand in the way of a finding of form nonconvenience? Well, I don't believe that. And I don't mean to say that that's a small thing. Don't get me wrong. I'm just asking. I want to make sure I understand correctly the position. There's not some other thing that we're not thinking about. It's that. It's the point that he says, I don't feel safe there. That would not be the only point. I believe that the Saudi Arabia court system, as found in the Peterson case, is not adequate. So I believe that there is indications that the way— What? Other than pointing at some district court case that said, yeah, we don't like the way the rules are there, have you given us any reason to believe, other than the safety concern that your client has expressed, that a Saudi Arabian court is not the better forum to address a Saudi Arabian contract involving Saudi Arabian parties and Saudi Arabian law? There is no other reason except I would say that I disagree with the way the question is framed on the facts here. I believe that you don't just have Saudi Arabia entities here. You have entities in Pennsylvania. You have corporations in the British Virgin Islands. You have St. Lucia. We don't have them. You've acknowledged they're not served. They're not in this case. We're talking about—I'm talking about this case, the parties. You've got in this case. They may not be parties, but Mr. Ripp and his estate are, and to the extent that those companies were involved, as far as documents, witnesses, those would be relevant. So it's not just based in Saudi Arabia. And there doesn't have to be just one forum. A case could be brought in multiple forums. There can be jurisdiction in more than one forum, and I don't believe that that is anything—just because one is better than the other doesn't mean that the plaintiff's choice should be overlooked. Saudi Arabia has pointed out that you can litigate this case in Saudi Arabia through the counsel that you have there, that the presence of your client, physical presence of your client is not required. Do you disagree with that? I'm sorry, that it could be litigated there without him being in Saudi Arabia? I don't know how it could be brought to trial. Certainly portions of the case could be handled remotely. Litigants don't have to be where the trial is going to be the entire time the case is being litigated, but certainly if there's a trial, I don't know how my client would not have to be present for that, if not for maybe other portions of the case might be able to get handled here or anywhere else in Saudi Arabia. But I would think that at least part of it would have to happen in Saudi Arabia. One final question, just a fact question I asked you before. When I asked you about service not being made on transcontinental, on Saudi Est, and on export, one of them is a Delaware entity, the other is a BBI entity, and the other is a Saudi Arabian entity. You're telling me all three of them do not exist anymore? As best I could, in my determination, I could not, yes, that is my understanding. And you found something with the Delaware Secretary of State that shows that transcontinental oil and financial group of America no longer exists as a company in Delaware, for example? Yes, it's not, there's nothing there. You can't find it. There would be something that would show that it once upon a time existed, but no longer exists? I don't believe I found documents of dissolution or anything like that, but I believe that it was my investigation was that it's not in existence. If you try to find it, you can't find it. It doesn't appear to exist. All right. Thank you very much. Thank you to all counsel for well-presented arguments, and we'll take the matter under advisement and call our second case of this morning. Take your time setting up.